### STATE, Plaintiff-Appellee, v. LOUGHNER, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 1856.   Decided April 24, 1945.

Fred J. Kerr, Asst. Prosecuting Atty., Dayton, for plaintiff-appellee.

A. W. Rothenberg, Dayton, for defendant-appellant.

### OPINION

BY THE COURT:

The defendant was tried in the Court of Common Pleas,

Domestic Relations, on an affidavit which alleged that he "did wilfully and unlawfully, aid, abet, induce, cause, encourage and contribute toward the delinquency and did act in a way tending to cause the delinquency of one Rose Hickel, a minor of twelve years, and one Beverly Hickel, a minor of three years, in this, to-wit: that he did engage in immoral conduct in the presence of said minors;"

The case was indifferently tried, which has resulted in some questions which might readily have been avoided had counsel been more particular. A jury was waived and the Court, after hearing the evidence, found the defendant guilty.

A motion for a new trial was filed and overruled and appeal taken to this Court.

Defendant files an Assignment of Errors:

1. To the effect that the Court erred in not having the defendant arraigned personally before the court.

2. That the State failed to show venue of the alleged offense.

3. The failure of the State to prove a case against the defendant beyond a reasonable doubt

4. Or to prove the allegations set forth in the Affidavit by such a degree of proof as is required by law.

5. That the judgment of the court below was against the weight of the evidence, and

6. Judgment is contrary to law.

7. For all other errors.

We have read diligently every word of the sordid testimony in this case. It presents a picture of a wife with three small children whose husband and father of the children was in the military service. She worked at a restaurant to late hours at night, and there became acquainted with the defendant who escorted her home and gradually became, as he expressed it, "fond of her". She lived in at least three different places in Dayton, Ohio, in the same rooming house with defendant. There is no direct testimony that the offense charged occurred in Montgomery County, except as the same appears from the names of the streets and the frequent allusions to incidents, locating them in Dayton. The police and the juvenile authorities of the City of Dayton, had frequent occasions to visit the places in which the two were living, which would indicate again that the venue in Dayton and Montgomery County was shown.

One witness, a state parol officer of Ohio, residing in Springfield, Ohio, testified in answer to interrogatories:

"Q. Do you know who the woman was?

A. She gave her name as Mary Smith.

Q. Did she give her address?

A. Yes, 123 N. Ardmore St;"

This is the only direct testimony as to the venue of the alleged offense. The venue has been sufficiently proved.

The husband and wife, who were the parents of the minors, lived together unhappily, and when he returned from the Army on a furlough, it appears that he immediately became intoxicated and went to the house where his wife was living and accused her of immoral relations with the defendant. She had told the defendant that she was divorced and he gives that as an excuse for his living in the same house with her and accompanying her on the various trips from that house. He did not take the stand nor did she, but the evidence was introduced as to the statements of each.

The older of the two children testified and denied that the defendant and her mother ever lived together as husband and wife or ever occupied the same room. This child could be easily deceived and was loyal to her mother. The defendant told a Rev. Smith, the father of the woman, that he wished to marry his daughter, Mrs. Hinkle, giving her name as "Mary Smith" her maiden name and stating that she was divorced from her former husband, the father of the children.

From the evidence, we cannot escape the conclusion that the man and woman were living together in intimate and perhaps immoral relationship at the various boarding houses where they resided. One witness testifies that on examining the rooms that he, the defendant, claimed to be his and which he stated he occupied alone, her dresses were found on the hangers, but this was explained by the landlady by a statement that she had washed the dresses and had hung them in this room for drying.

We do not believe that the youngest child, who was only three years of age, could be influenced to become a delinquent or to be subject to any tendency to become delinquent, but we are of the opinion that the older child was well informed of the probable misconduct of her mother with the defendant, and that the actions of the defendant could tend to contribute toward her delinquency.

We shall not delve more deeply into the actions of these two individuals, but are of the opinion that the evidence was sufficient to justify the finding of the Court below that the defendant was guilty as charged in the affidavit.

It is claimed that the court erred by reason of the fact that the defendant did not appear personally before the judge to enter a plea of "not guilty". However, it does appear that defendant was in court in company with his attorney, who, in chambers, entered a plea of "not guilty" for him. We think this is a sufficient appearance before the court.

Judgment of the Court below affirmed.

HORNBECK, P. J., GEIGER and MILLER, JJ., concur.